**UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT
HARTFORD DIVISION**

| | |
|---|---|
| In re:<br><br>Charles A. Bewry,<br><br>    Debtor. | Chapter 13<br><br>Case No. 17-20435 (JJT)<br><br>Re: ECF Nos. 132, 135 |

**MEMORANDUM OF DECISION AND ORDER
SUSTAINING IN PART AND OVERRULING IN PART
DEBTOR'S OBJECTION TO CLAIM 2-1 AND GRANTING
IN PART AND DENYING IN PART DEBTOR'S MOTION
FOR ORDER ALLOWING PAYMENT OF REMAINING
CREDITORS AND REQUEST FOR RELEASE OF LIENS**

Before the Court are the Debtor's Motion for Order Allowing Payment of Remaining Creditors and Request for Release of Liens ("Motion," ECF No. 132) and the Debtor's Objection to Claim 2-1 ("Objection," ECF No. 135) filed by Neff Companies LLC d/b/a REI Holdings LLC ("REI"). The Chapter 13 Trustee filed a response to the Motion, suggesting that the Court find that REI is due no more than the total paid to date (ECF No. 140). For the reasons that follow, the Court sustains in part and overrules in part the Objection and grants in part and denies in part the Motion.

**I.    Background**

Prior to this Chapter 13 case, REI purchased 2006–2009 tax liens on the Debtor's property at 22 Cabot Street, Hartford, CT previously held by the City of Hartford. After they remained unpaid, REI's predecessor filed a foreclosure action based upon the 2006–2009 taxes and eventually obtained a judgment of strict

foreclosure against, among others, the Debtor. *Am. Tax Funding, LLC v. Bewry*, Judicial District of Hartford, No. HHD-CV-12-6037054-S, Dkt. Entry No. 159.00 (Conn. Super. Ct. Jan. 9, 2017). The Debtor filed this Chapter 13 case on March 31, 2017, which was three days before the law day. REI timely filed proof of claim 2-1 ("Claim 2-1") in the amount of $56,314.63 on the basis of the 2006–2009 tax liens. Pertinent here, on March 19, 2021, the Court granted the Debtor's motion to modify a confirmed plan (ECF No. 110).

During the course of the Chapter 13 plan and in accordance with its terms, REI, as a secured creditor, received and processed some periodic payments from the Chapter 13 Trustee; however, in May 2022, REI declined to deposit the disbursement checks it received. Despite attempted contact by the Debtor to understand its conduct, REI has not responded.

A potential explanation of REI's inaction may be provided by enforcement activities before the banking department of the State of Connecticut. On April 18, 2023, REI was ordered by the Connecticut Banking Commissioner to cease and desist from collecting consumer debts without a consumer collection agency license and to make restitution.[1] This order was made permanent by a July 6, 2023 order from the Connecticut Banking Commissioner, which also ordered a civil penalty against REI.[2] The April 18, 2023 order indicated that REI "made representations to

---

[1] Under Conn. Gen. Stat. § 36a-800(3), a "consumer collection agency" includes any entity "engaged in the business of collecting or receiving tax payments, including . . . property tax . . . payments, from a property tax debtor . . . on behalf of a municipality[.]" Meanwhile, "consumer debtor" includes "any natural person . . . who has incurred indebtedness or owes a debt to a municipality due to a levy by such municipality of a property tax[.]" *Id.*, § 36a-800(4).

[2] The Court takes judicial notice of the Connecticut Banking Commissioner's orders.

2

the [Consumer Credit Division of the Department of Banking] that it was no longer engaged in consumer collection activity in Connecticut and would transfer its existing accounts to appropriately licensed entities." Despite this representation, that order indicates that REI continued to collect or attempt to collect consumer debt and failed to transfer its existing collection accounts.[3]

The Debtor filed the Motion on November 2, 2023 and the Objection six days later. Collectively, the Debtor seeks for the Court to disallow Claim 2-1 on the basis that it is unenforceable against the Debtor and allow the Chapter 13 Trustee to use the amounts undeposited by REI to pay other creditors that have been paid under the plan. REI failed to appear at the hearings on the Motion and Objection and otherwise failed to file a response to either the Motion or the Objection and is effectively in default.

## II.    Jurisdiction

The United States District Court for the District of Connecticut has jurisdiction over the instant proceedings under 28 U.S.C. § 1334(b), and the Bankruptcy Court derives its authority to hear and determine this matter on reference from the District Court under 28 U.S.C. § 157(a) and (b)(1) and the General Order of Reference of the United States District Court for the District of Connecticut dated September 21, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B).

---

[3] Nothing has been filed either on the docket or claims register of this bankruptcy case indicating that REI has transferred Claim 2-1. Additionally, nothing on the Hartford Land Records indicates that REI has transferred its interest the 2006–2009 tax liens.

3

**III.    Discussion**

    A.  <u>Objection to Claim 2-1</u>

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Unless a party in interest objects, it is deemed allowed. 11 U.S.C. § 502(a). An objection must be lodged in accordance with Fed. R. Bank. P. 3007. The objecting party must "produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Driscoll*, 379 B.R. 415, 420 (Bankr. D. Conn. 2008) (citations omitted). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re Vanegas*, 290 B.R. 190, 193 (Bankr. D. Conn. 2003) (citations omitted).

Claims may be disallowed if "such claim is unenforceable against the debtor and property of the debtor, under any . . . applicable law[.]" 11 U.S.C. § 502(b)(1). "To determine whether a claim is allowable by law, bankruptcy courts look to applicable nonbankruptcy law." *In re Residential Cap., LLC*, 513 B.R. 446, 458 (Bankr. S.D.N.Y. 2014) (cleaned up).

The Debtor argues that Claim 2-1 should be disallowed because it is not enforceable outside of bankruptcy due to the orders of the Connecticut Banking Commissioner; however, Section 502(b) of the Bankruptcy Code provides that the

4

Court "shall determine the amount of [a] claim . . . *as of the date of the filing of the petition*[.]" 11 U.S.C. § 502(b); *see also In re Flanagan*, 503 F.3d 171, 179 (2d Cir. 2007).

The orders of the Connecticut Banking Commissioner suggest that REI's claim and lien remain valid—but may not be enforced by REI—if characterized as consumer debt.[4] REI has simply conceded, by its default here, that the debt may be consumer in its nature. It has also either abandoned its claim recovery efforts in the failure to respond or should be equitably estopped from further collection by virtue of its inaction and nonresponsiveness.

Although 11 U.S.C. § 347 provides an answer for what to do with unclaimed property after the final distribution in a case has been made, it says nothing about what to do when a creditor's disbursements go undeposited during the pendency of the plan, nor does any other statutory provision. *See In re Lee*, 189 B.R. 692, 696 (Bankr. M.D. Tenn. 1995). In *Lee*, the court reconsidered a previously allowed claim for a creditor that failed to keep the court apprised of its current address and disallowed the remainder of the claim. *Id.* The court reasoned that the creditor, "by its own actions, failed to protect its right to its share in the plan proceeds by not providing its new address to the court." *Id.* Thus, under § 502(j), the court reconsidered the claim for cause, disallowed its balance, and then allowed the Chapter 13 Trustee in that case to distribute the disallowed amount to other creditors. *Id.*

---

[4] The mere fact that REI obtained a judgment of strict foreclosure in the Superior Court further buttresses this conclusion.

5

This Court recognizes that other bankruptcy courts have disagreed with *Lee*, holding that § 347(a) presents the only available avenue for unclaimed property. *See, e.g.*, *In re Cunningham*, 2017 WL 4417579, at *3–4 (Bankr. M.D. Tenn. Oct. 3, 2017). Generally speaking, "an unlocated creditor has a property right in [its] distributive share of the funds of a bankruptcy estate." *Leider v. United States*, 301 F.3d 1290, 1296 (Fed. Cir. 2002). And the creditors at issue in *Lee* and *Cunningham* were essentially that—unlocated creditors. Here, however, REI is not unlocated; it is nonresponsive and barred from unlicensed claim enforcement proceedings. The address listed on its notice of change of address (ECF No. 69) is the same as that noted in the Connecticut Banking Commissioner's April 18, 2023 order. It is also the same as that listed on the Utah Division of Corporations and Commercial Code website—of which the Court takes judicial notice—the registration of which was last renewed on November 10, 2023. This is not the case of a creditor that cannot be found but one that is declining to accept its distribution payments. Under the equities of this case and upon REI's default, the Court determines that REI's claim shall be disallowed as it has abandoned the right to any further payment through the Chapter 13 plan and the Court thus sustains the Objection to that extent.[5]

Beyond assailing REI's rights to future payments, the Objection has also requested that the Court disallow Claim 2-1 in its entirety. At the December 20, 2023 hearing, the Debtor disclaimed any remedy, right, or objection to those payments made and deposited by REI. Furthermore, the Debtor has provided no

---

[5] Although the Court is adopting the logic of *Lee* under the circumstances of this case, this should not be read as a blanket endorsement in future cases.

authority for the Court to disallow those already deposited payments.[6] The Court thus overrules the Objection to the extent it seemingly objects to those REI payments already received and duly processed.

B. Motion for Order

In the Motion, the Debtor has requested an order (1) allowing the Chapter 13 Trustee to use the money being held on REI's behalf to pay off the remaining allowed claims in the case and (2) releasing the underlying REI tax liens. Because the Debtor's plan payments are property of the estate, *see* 11 U.S.C. § 1306, it is evident that—absent REI's claim—such funds would have been distributed to other creditors to be paid under the plan. The Court has no issue with the Chapter 13 Trustee paying the remaining allowed claims using the funds that were initially earmarked for REI and thus grants the Motion in that respect. *See Lee*, 189 B.R. at 696.[7]

The Court, however, will not order the release or discharge the underlying REI tax liens as this Motion is not the proper procedural vehicle for their release. Although 11 U.S.C. § 545 allows for the avoidance of some statutory liens, the failure to accept payment does not fit within any of its parameters that would authorize such an avoidance. Determining the validity, priority, or extent of a lien is properly pursued in the commencement of an adversary proceeding. *See* Fed. R.

---

[6] Although the Debtor likewise did not cite *Lee* or any of the other cases dealing with § 502(j), the Court takes the Objection, the Motion, and the hearings to effectively have requested the relief provided in *Lee*.

[7] Given the 0% dividend paid to unsecured creditors and the continuing presence of the lien, the Court is less concerned here than with a situation where the claim to be partially disallowed is a general unsecured claim, which could affect the dividend in future payments.

Bankr. P. 7001(2). Although REI has ostensibly abandoned or forfeited its right to further payment on Claim 2-1 through the plan, the tax liens cannot be said to have been fully satisfied through the disbursements REI has accepted.[8] The Court thus denies the Motion to the extent it seeks to order a release of the tax liens.

### IV.  Conclusions

For the reasons expressed above, the Court:

(1) SUSTAINS in part and OVERRULES in part the Objection, disallowing Claim 2-1 only beyond any disbursements received by REI that it has deposited to date;

(2) GRANTS the Motion to the extent that it seeks an order allowing the Chapter 13 Trustee to use funds earmarked for REI to pay the other creditors to be paid under the Debtor's Chapter 13 plan; and

(3) DENIES the Motion to the extent that it seeks an order releasing or discharging the tax liens underlying Claim 2-1 without prejudice to the Debtor seeking release of those liens through other regulatory or judicial proceedings.

IT IS SO ORDERED at Hartford, Connecticut this 11th day of January, 2024.

*James J. Tancredi*
United States Bankruptcy Judge
District of Connecticut

---

[8] At the December 20, 2023 hearing, various procedures under the Federal Rules of Bankruptcy Procedure (including the potential need for an adversary proceeding) and state law were discussed as possible vehicles for obtaining a release of the tax liens. The Court will not opine here on which may be proper under the circumstances.